Good morning, and good day to the court. I'm Scott Watson on behalf of the FDIC, and I'd like to request two minutes for welcome, knowing that I'm responsible for my own time. For this morning, I'd like to focus on three principal points. The first is I'd like to briefly discuss this court's role under California law in interpreting the policy. Even though our language seems facially unambiguous, the court must consider extrinsic evidence of the policy as a whole and the surrounding circumstances. Second, I'd like to focus on California law as it applies to the surrounding circumstances we care to. The deletion of the regulatory exclusion that specifically named the FDIC a deposit organization as a receiver or in any capacity, the deletion of that exclusion from the DNL policy, and the wholesale removal of it from the EPLI. Supporting objectively reasonable expectation of coverage for claims by the FDIC as receiver or in any capacity. And finally, I'd like to turn to a recent decision of this court. This policy language and similar circumstances had been considered by the court in the bank insurer decision, which did not issue a presidential published opinion. I'd like to explain why this court should respectfully adopt the better reasoned dissenting opinion. It gives effect to California law and ultimately gives effect to all the terms of the policy. Under California law, exclusions have to be stated in clear and concise as a whole, taking into account those surrounding circumstances. As the EMLI case explained, percussions shift between clarity and ambiguity with changes in the event at hand. And even before the Citigas versus Tom Stray case, the often cited statement of the law in California, even before that, the California Supreme Court had explained that words mean different things to different people. Standing alone, they might mean one thing, but parties by their action and performance might demonstrate a different meaning. Parties can create an ambiguity, and that's in Crestview Cemetery versus July 8th, 54th House, 1744. In interpreting the policy, the court should interpret it so as to give meaning to every term or provision. Every word should be given meaning where it can. And in the insurance context, the inquiry here gets into whether there was an objectively reasonable expectation of coverage. I think it's fair to say that bank insurer in this case wants to focus on the plain language standing alone in the policy and not as considering these policies whole in these surrounding circumstances. I'd like to talk about the surrounding circumstances briefly. And as our brief made clear going back all the way to the 80s and 90s, the regulatory exclusion directed at regulators, including the FDIC, is the preferred method of excluding claims by the FDIC. In some cases, the insured versus the insured provisions during that time were not successful. That explains why bank insurer could put into the regulatory exclusion in this set of policies the definition of agency that includes a deposit insurance organization as a receiver or in any capacity that protected them when they put it into the exclusion. The regulatory claims included FDIC as receiver. And they're the ones that define regulatory claims. They're also the ones that, given that exclusion, defined all of these potential claims as agency claims that gave it a name. So when CCOW, the holding company in County Bank, wanted their regulatory claims covered, they negotiated the deletion of that regulation excuse me, of that regulatory exclusion by an endorsement. And they even established supplements for coverage. And Mr. Cross, the corporate designee on behalf of bank insurer, explained that the removal of that exclusion would result in an expectation of coverage. And when County Bank and CCOW, after establishing those supplements and removing by endorsement the regulatory exclusion, they wanted to expand their coverage in the vehicle that they were ultimately directed to was a new policy, the EPLI, which intentionally omitted the regulatory exclusion entirely. And that was done to remain competitive. Mr. Cross, in his deposition in the tax records in 794, 795, explains that they needed to be competitive. His viewing of bank insurer also explained that by 2006, in general, those regulatory exclusions were not being left in the policies. They were being taken out and put in banks in pretty good shape. They were expanding the coverage and leaving, but they left the insured versus insured exclusion as it pertained to receivers. As it pertained to receiver trustee or other successors, that's right. With all due respect, Your Honor, it didn't mean any receiver. And that's because the word any receiver in isolation certainly might suggest that. But as this Court explained again in Unified Western versus Twin City, that's 457, Fed 3rd, and I'm looking at pages 1116 and 1117, they needed to be discordant to determine whether that language is consistent with an insurer's objective, a reasonable expectation of coverage. And in that case, as this Court said, although in the ordinary popular science, any trustee may be reasonably excluded in the abstract, including bankruptcy trustee, the exclusion in that case wasn't ambiguous because in the light of other policy provisions regarding trustees, insurers can have a reasonable expectation that a particular type of trustee was not included, notwithstanding the use of the word any, which is in the context of that policy, bankruptcy trustees, and trustees within the business were viewed differently. And so there was a reasonable expectation of coverage, notwithstanding the use of the word any, and that's the position that we're in here, which is any abstract, any receiver might mean any, but FDIC bringing claims as a deposit and true insurance organization as receiver was bringing agency claims. They were covered specifically by a separate exclusion, and that separate exclusion had originally been negotiated away by endorsement and was left out of the policy to remain competitive, but it was available. Bank insurers still had it. It was available to use it in cases where they thought the bank was in some sort of trouble, and indeed, the record reflects that they did use it. Mr. Cross talked about one bank in which they were, in Nova Bank, I believe is the name, that was included in certain policies, and it was available to them, and that's why I can turn specifically to California law about objectively reasonable expectations of coverage in the three cases that I think most closely deal with our situation here are all in our brief American Alternative, Safeco, and the Woods case. And what American Alternative is is a case where the court is making an objectively reasonable expectation of coverage. Why should we go and contradict a recent panel, even in a non-presidential opinion, FDIC versus Bank Insure, and also contradict the Tenth Circuit, who analyze the same scheme? I think you can take those in reverse order. I think the court must step away from the Tenth Circuit's Bank Insure decision because that Bank Insure decision was made under a CalBank season under Kansas law, which has a very different rule as to extensive evidence and ambiguity derived from the face of the document. And in Bank Insure itself, in that Tenth Circuit opinion, they acknowledge that other jurisdictions do have another rule that is in Kansas's rule. We suggest that California is the prime example of another state with a different rule. The court's obligated, it's reversible error, not to look at the surrounding circumstances in the policy as a whole. So if I looked at the surrounding circumstances in the FDIC, thought it meritorious that there was insurance, why would you sell for $500,000? Hello? If the people believe genuinely this policy applies and your claim is far more than $500,000, why would you have agreed to settle? Isn't that one of the surrounding circumstances that would lead a reasonable person to think that there was not an expectation that this would be covered under the policy, or at least that it was very low amount of expectation of policy coverage? I believe we absolutely have, the FDIC had an expectation of coverage. I can't comment on all of the elements that went into a decision to settle, but I can comment on the state $2,548,000,000. The state, your honor, the state of California is the objectively reasonable expectation of the insurers. The insurers here were CCOW, County Bank, and the directors and officers of that bank. And the reasonable expectation, the objectively reasonable expectation of coverage resulted from the deletion of that exclusion. That's California law, American Alternative. CCOW also addresses what happens when there's a common exclusion. It is available to the insurer, it's regularly used, but it's not used in the policy. Do you think that when we deleted that, also retained the insured versus insured in the plain meaning of the term receiver would encompass the FDIC as receiver? Respectfully, that's American Alternative. American Alternative, the reason that the court found it necessary to comment on the effect of the deletion creating a reasonable expectation of coverage is otherwise arguably would have fallen under an exclusion from coverage that was broader. In that case, there was an exclusion for governmental seizures and also a broader exclusion for physical damage, which was what the court was focused on. But the physical damage or loss of the American Alternative would have encompassed governmental seizure claims. But the court said, no, there had been an exclusion for governmental seizure claims. And by having removed that from the policy through endorsement, that that had given rise and supported an objectively reasonable expectation of coverage. And I think the question to be asked of the insurance company, if they thought they were covered by the insured versus insured results, why when they negotiated the policy to remove the regulatory exclusion, why would they establish a supplement of $10 million for those claims? It's because as their corporate designee explained, and as makes sense, if you have a very specific exclusion that's directed to a specific circumstance and it is removed from a policy, there is an expectation of coverage. Mr. Cross said, if you took away the regulatory exclusion, you would expect coverage. And I do want to reserve some time just quickly. It's a dissenting opinion, and I think the majority opinion in the recent unreported decision seems to make the Kansas people hold an endosite to the dissenters' opinion. And it led DOP to explain why the exception to the exclusion for derivative claims didn't apply in that case. But what the court did was exactly what the proceeding judge did, and that was look at American Alternative and look at what the effect was of removal and exclusion from the policy, and then going on to purchase the APPLI that had that wholesale removed. It could only be applied or reinserted by the insurance company, and it was not reinserted in this case. So with that, I'll reserve my remaining time. Thank you. Thank you. My name is Ashton Ford, and I work on IOU against John Culbertson. I represent John Doak, the insurance commissioner for the Greens, Howard City, Oklahoma. This is a court where Mr. Doak is charged with winding up the affairs as a receiver and considering claims such as subsistence, solving them, and ultimately eliminating the mistake. Mr. Doak does not claim that he's, quote, a different receiver, close quote, because he isn't, and neither is the FDIC. The FDIC, that is the governmental agency that is in charge of the insurance corporation, is not present in this court. It's not a party to this case. Justice Blument made that very clear in the Melvin case. That is why a statement that will be referred in best way to exclude claims by a receiver is absolutely unsupportive. I think that's all. So that's good. If I can interject a question. Are we really looking here at whether the directors and officers had a reasonable expectation of coverage, but because the FDIC is proceeding as an assignee of their claims? I think that's right. Reasonable expectation of coverage is correct. The question, the very sole question is, should parole evidence, extrinsic evidence, demand when on the face of the intrusion it says any receiver, and you have a non-government agency in this courtroom claiming we're not any receiver because we're a government agency, is extrinsic evidence to demand in that situation? And the answer is no, because they are any receiver. As the attorney pointed out in the Claremontian case, the regulator can appoint any parties as a receiver under 1813J. That's how it was traditionally done. That's how it's still done by the SEC. For example, we have a very good bankruptcy trustee and professional receiver here in San Francisco, Mr. Green's family. He's recently been appointed by the SEC, a very large financial investor in Oregon. He could be the receiver, and guess what? He would have all of these special powers that the FDIC has as a receiver in this case since we have him as a receiver. Not true. As Justice Gilead noted, anyone can serve as a receiver, and Donnie can serve as a receiver, and we've had every single one of those set aside as special powers, similar to a bankruptcy trustee, that the FDIC would have under a receiver, so it's not under 1813J, so it's not a different receiver. And the problem with this supposed to create exclusion, that's more on point, and the Security and Conservative Courts seem to accept that, is that that is not true. It is not for better exclusion. These would be the intradiversal exclusions. Let me explain why. As Magistrate Judge Boone noted in his opinion, the early pieces that dealt with these exclusions had a wide variety of language, and the original exclusions, because the underwriters were unsophisticated, only had part one exclusion as well, so it's a two-part exclusion. Part one excludes all regulatory claims, and then in part two, to deal with cases such as American Casualty vs. FSYC, where a part one exclusion was not enforced, the underwriters later slapped agency on receiver. That's not a good exclusion. If I were arguing that in the first bank failure crisis, I would have said not that it's against public policy, but that it's crazy. Agencies aren't receivers. You're doing different things. You're defining someone that's not an agency as someone who is agency, and that's wrong. That's why our exclusion is the insured vs. insured exclusion. It's actually the superior exclusion in making clear to a reasonable director and officer that we don't cover a successor, and that's an important point that's been left out in all of the cases. We point to the clause as a whole. The clause as a whole, and Judge Boone described it as the equal dignities principle, includes anybody that succeeds, and what's the rationale behind that? We insure your management, we insure your bank, we insure your holding company, and the clear message of that clause as a whole is based on these bannings and ratings, and the word must, is that nobody other than you gets coverage for claims against the directors, for claims against the directors and officers that you wouldn't have coverage for. As to these successors, you know, a lot of times, a company will buy into a bank holding company, find things they don't like, and then all of a sudden, there's, we don't want that. We don't want assignees, we don't want bankruptcy trustees, we don't want anybody that comes after, why? That's not the risk we insured. We insured your management, and it's a critical theory. Courts are really looking at exclusions as a whole in following security-specific, because security-specific made a mistake in saying that the preferred exclusion was the regulatory exclusion. Yes, it's used a lot, but it's a mess, because it defines a receiver who is not an agency, but says it's clear management, as an agency, when they're not. At least these, there are no such internal ambiguities and inconsistencies in the insurer versus the insurer institution. There's another rationale that I think needs to be considered by this court, is the court follows security-specific. This case isn't just moot, it's uber-moot, it's super-moot, and here is the reason. The regulatory exclusion that was deleted in the security-specific policy doesn't exist at all in this policy. In order to use that exclusion, you have to take it off the shelf. It's on the dusty corner of the Department of Insurance to use it to interpret this policy that violates multiple decisions that were decided in our brief. It violates Aiden versus First State, Levi Strauss, and it actually violates Safeco. Here's what Safeco says. It says the exact opposite of what counsels just argue in Safeco meetings. It says we cannot read into the policy what Safeco has admitted. To do so would violate the fundamental principles that interpret insurance contracts, including insurance contracts. Courts are not to insert what has been omitted. To look at this regulatory exclusion that is not within the four corners of the policy would actually violate the principles of Safeco. The difference between Woods, Safeco, and American Alternative, well, not Safeco, Safeco went off on a tangent on another exclusion, really because Justice Baxter said, this seems pretty close to this kind of exclusion. No one argued that, in fact, the exclusion was ambiguous because there was a better one other than Justice Baxter who said, I think this is pretty close. Do you know why? If you look at the facts of that case, the criminal conduct was pretty egregious. It was kind of hard to let the assertive elect on that policy. But this is not a situation, as in Woods or American Alternative, where something has been added in order to change the policy language. This policy is completely silent on regulatory claims, except in one instance. I'd like the board to look at this, because people have argued this before, and I can see ignoring it in the traditional P&L policy cases. But the terms regulator and receiver are used in one portion of the policy, and it's clear, just as Justice Sophia did, that banking sector differentiated between the regulator who appointed the receiver and the receiver. In that section 10G of the policy, again, consistent with the theme that we do not want to pick up strangers. They should have better rights than our original board of directors and corporation had against directors and officers. The clause determinates on the employment of any form of successor, and that provision says, for the purposes of this clause, the cessation of business of banking shall include, but not be limited to, the appointment of any federal or state banking regulators of a receiver, like we're today, or a person in a similar capacity, and any transaction occurring at the request of any federal or state regulator. What does that mean? It's the only place in the existing policy that this board is looking at where the terms regulator and receiver are used, and they're differentiated. They're not the same thing, and so any receiver doesn't mean any regulator. Any receiver means any receiver, and to rule otherwise would be violating the board decision which says that any means every, and there is no reason to treat the FDIC differently because it is any receiver, and any receiver that the California DFI or the board of business oversight appoints let's say specifically is to have identical rights as the FDIC has in this case, and so if the court actually looks at the policy in front of it, it can't confuse receiver with regulator. It's got to read any of the exactly what he says. I also want to go back to the starting point of this argument that in all cases, extensive evidence can be indicially accepted to determine whether there's an ambiguity, and does American Alternative say that? Yes. The decision is absolutely wrong, and that's been recognized by other cases such as the ACL Technologies case. The American Alternative case relies on the Thomas Graves case, not an insurance case, that is easy to justify, but it's facts that do not support the proposition that the court must always consider extensive evidence. We're free to ignore the meaning of California law, aren't we? I mean, you're saying this is wrongly decided, but we apply California law. American Alternative is wrong, Your Honor, and it's explained in the ACL Technology as to why. So the operative provision that you look at in determining ambiguity is both sides have committed. It's Section 1639 of the Civil Code, which says you look at the writing alone to determine if possible. If possible means after you look at it, you find no ambiguity. And so 1639 basically by its own terms says don't go beyond the policy unless you find the ambiguity first. American Alternative cites Thomas Graves to the idea that you always look at extrinsic evidence. Think about that. Look at what a mess this case has become in terms of the size of the record because out of caution, I think, being a new magistrate judge, with a split, so to speak, American Alternative ACL Technologies, magistrate judge Boone didn't take the chance of not considering the extrinsic evidence. Why do so? When he looked at it, he found all of it supported our position because the bank officer that bought the policy knew that unless this provision was changed, it would have no coverage. So it's supposed to be the reasonable expectations, but actually the actual expectations in this case was that they were not expected. They read the policy and, as ordinary bankers, were not expecting coverage. ACL Technologies gets to the root of the problem and explains why American Alternative is wrong. By the way, there are two cases. It's not strange. The Bank of the West and AIU Insurance, both of them clearly hold you do not consider extrinsic evidence unless you first of all find an ambiguity. So ACL cites those cases to the authorities and explains the problem with the root case that American Alternative relied upon, which is the dry agent case. Pacific Gas has been criticized for casting doubt on the very possibility of finding meaning in language. The correct case to cite for that is a Ninth Circuit case called Triton Center v. Connecticut Life Insurance, 1988, 847, F2, 564. So this court has already found Thomas Strange with doubtful authoritativeness even before Bank of the West and AIU was decided. So the court goes on to describe what really happened in Pacific Gas, inciting Pacific Gas to the idea that extrinsic evidence is always available to show an ambiguity no matter how plain the actual words of a contract may be. Contrasts would appear to be tacitly agreeing with the critics' reading of Pacific Gas. With all due respect to the critics of Pacific Gas, the case is not an endorsement of linguistic nihilist meaning that extrinsic evidence always comes in. The court goes on to state that despite what might be called its deconstructionist dictum, the actual holding of the case is a fairly modest one. Courts should allow parole evidence to explain special meanings, which the individual parties to a contract may have given certain words. There was never any evidence. The parties never even discussed this constitution before the policy was issued. In any case, the first policy or the second policy. So there was no special meaning. Thomas Strange is a special meaning case. It has a different doctrine. It is in the civil code, but it does not actually support what American Alternatives Bank of the West, AIU, ACL Technologies, resects the correct rule. Parole evidence should never be considered by the lower court, and it shouldn't be considered by this court. Thank you. Thank you, Hansel. Thank you. Thank you, Mr. Shepard. Mr. Watson, I have two questions. Yes, sir. I know you make these very quickly. The first is that my brother claims that we are wrong to define the FBI as an agency. It just is a mouthful of something different. If we're only to look for parole evidence or outside evidence, we were talking about a special meaning. It is bank insurer that defined the FDIC receiver as an agency. They did it in the regulatory exclusion. Any action or proceeding brought by or on behalf of any federal or state regulatory or supervisory agency or depositing insurance for an agency is an agency, and this applies to any agency, may raise receiver, conservator, trustee, liquidator, rehabilitator, or in any capacity. They couldn't have done more to define the FDIC in their own exclusion as an agency. It is a mess. California law says it's their mess. Exclusions have to be stated unmistakably here, and if there is a problem, it's going to be construed against the insurance company. As for looking at things outside the policy, what he cites in his note is in support of us. What can't be inserted because it has been omitted was, in that case, a specific exclusion that was commonly used but was not in the contract, the criminal exclusion, and that's exactly what we have here, which is there is a commonly used regulatory exclusion that they have. The need didn't be asserted in this contract, and as I've already explained, that gave rise to an objectively reasonable expectation of coverage. As he put it, it is reversible error not to consider extrinsic evidence. As Pacific Gas versus Suckerman said, it's not paroled evidence of undisposed intention, but it's evidence of words in this contract. Well, think about the lower court's finding. These e-mail exchanges do not support the interpretation urged by the FDIC, and that was considering all of the evidence, and they said everything was concise. I'd also recommend seeking an endorsement to the policy to cover these sorts of claims, and I think you back and said, no, we're not going to do that endorsement.  Mr. Judge, in the next judge, in his opinion, he interpreted each of those exchanges and each of the arguments the FDIC made in order to show that their interpretation could be a reasonable one as well, but those e-mail exchanges make clear that in large part they were discussing a bankruptcy trustee or a bankruptcy trustee or a successor from a holding company. Mr. Cross has explained that in reading those, they were referring to a bankruptcy trustee or successor there, and Ms. Ewing explained, well, for the failures of the bank, they don't have to worry about that because they're not taken over by a trustee. They're taken over by the FDIC, and the FDIC has been separately defined by bank and jury. So it might be possible to read those e-mail exchanges as consistent with what they're arguing, but they're not equally consistent with what we're arguing, and if that's the case, it gives rise to an ambiguity that has to be considered in our favor and against the jury. Thank you, everyone. The FDIC v. Donovan is submitted, and we'll take up San Francisco, the Argus Association versus DOI.
judges: Wardlaw, Gould, Huff